UNITED STATES DISTRICT COURT                    O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BMW FINANCIAL SERVICES, NA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. M-11-292 |
| | § | |
| RIO GRANDE VALLEY MOTORS, INC., | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court are two motions for summary judgment which were filed by

Plaintiff BMW Financial Services NA, LLC ("BMW"), along with numerous associated filings.

The Court will more specifically discuss relevant facts below in the context of each motion for

summary judgment. However, on a broad level, the situation before the Court concerns whether

BMW has a right to recover collateral under several financing agreements and, if so, whether

that right extends to certain funds interpleaded into the Court's registry.

### I.  Legal Standard

#### A.  *Summary Judgment Standard*

In a summary judgment analysis under Federal Rule of Civil Procedure 56, the Court

considers evidence from the entire record, and views that evidence in the light most favorable to

the non-movant.[1] Thus, although the Court refrains from determinations of credibility and

evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-

movant; on the other hand, regarding evidence that favors the movant, the Court gives credence

---

[1] *See* Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000); *see also* FED. R. CIV. P. 56.

to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[2]

Viewing the evidence in that manner, summary judgment is proper where two conditions are met: first, the movant must show that the evidence presents no genuine issues of material fact and, second, the movant is entitled to a judgment as a matter of law.[3] In the context of the first criteria, a fact is "material" if its resolution could affect the outcome of the action,[4] while a "genuine" issue is present "only if a reasonable jury could return a verdict for the non-movant."[5] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[6]

The movant bears the initial burden of showing the absence of a genuine issue of material fact.[7] In this showing, "bald assertions of ultimate fact" are insufficient.[8] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[9] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[10]

If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[11] This demonstration must specifically indicate

---

[2] *See id.*
[3] *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
[4] Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc., 482 F.3d 408, 411 (5th Cir. 2007).
[5] Fordoche, Inc. v. Texaco, Inc., 463 F.3d 388, 392 (5th Cir. 2006).
[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[7] *See Celotex Corp.*, 477 U.S. at 323.
[8] Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978).
[9] *See Celotex Corp.*, 477 U.S. at 323.
[10] *See id.* at 323-25; *see also* Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir. 1995).
[11] *See id.*

facts and their significance,[12] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[13]

### B.  Summary Judgment Evidence

All parties before the Court regarding these motions have submitted summary judgment evidence in the form of affidavits. The Court emphasizes at the outset that such evidence is sufficient to support or oppose a motion for summary judgment. Under Federal Rule of Civil Procedure 56(c), an affidavit or declaration serving as summary judgment evidence "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[14]

BMW's two motions for summary judgment are supported by the same sources of summary judgment evidence. As an initial matter then, the Court examines the competency of those evidentiary sources, before later considering whether the evidence is sufficient to independently support each motion. BMW proffers the following: (1) an affidavit by David Brubaker ("Brubaker Affidavit"), the Commercial Finance Services Manager for BMW, who served as the account manager of the financing agreements;[15] (2) an affidavit by Lee Maas ("Maas Affidavit"), the Vice President of Network Development for Jaguar Land Rover North America who was involved in the settlement agreement which gave rise to the interpleaded funds.[16]

---

[12] *See* Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

[13] U.S. ex rel. Farmer v. City of Houston, 523 F.3d 333, 337 (5th Cir. 2008) (citing TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002)).

[14] Fed. R. Civ. P. 56(c)(4); Beijing Metals & Minerals Import/Export Corp. v. American Bus. Ctr., Inc., 993 F.2d 1178, 1182 (5th Cir. 1993).

[15] Dkt. No. 68, Attach. 1 at ¶¶ 2 & 3.

[16] Dkt. No. 68, Attach. 5 at ¶¶ 2 & 4. Despite the duplication of the Brubaker and Maas affidavits in support of both of BMW's motions for summary judgment, the affidavits, and their accompanying exhibits, are identical. For clarity, the Court will refer to them by the monikers "Brubaker Affidavit" and "Maas Affidavit," without reference to the specific docket location.

The Rule 56(c) requirements are met by both the Brubaker Affidavit and the Maas Affidavit, and the Court therefore finds those affidavits to be competent sources of summary judgment evidence.[17]

BMW has also submitted over 100 pages of records to evidence its claims.[18] Although none of the responding parties object to the admissibility of the records which BMW submits as summary judgment evidence, the Court nonetheless notes that those records are admissible either as non-hearsay or under Federal Rule of Evidence 803(6) as an exception to the hearsay rule.[19] As the custodian of the records, David Brubaker attests that the records meet the requirements for admission.[20]

## II.  Motion For Summary Judgment on All Claims As to All Remaining Defendants[21] ("Finance MSJ")

The nature of the two motions for summary judgment recommends that the Court first consider the Finance MSJ.

### A.  *Relevant Background*

Plaintiff BMW is a Delaware limited liability company with its principal place of business in Ohio, which entered into inventory finance agreements with two car dealerships (collectively, "Floorplan Agreements" or "Agreements"). The first agreement[22] ("RGVM Agreement") was entered into between BMW and Rio Grande Valley Motors, Inc. ("RGVM") as

---

[17] *See* Brubaker Affidavit at ¶ 1 (attesting to personal knowledge, mental competency, age over 21, and lack of conviction) *and* Maas Affidavit at ¶ 1 (attesting to same).

[18] Dkt. No. 68, Attachs. 2-4 (Exhibits 1-17 of the Brubaker Affidavit).

[19] FED. R. EVID. 803(6) ("Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.").

[20] Brubaker Affidavit at ¶ 7.

[21] Dkt. No. 68.

[22] Brubaker Affidavit, Exh. 1.

the principal obligor; RGVM is a Delaware corporation with its principal place of business in McAllen, Texas. The second agreement[23] ("RFSI Agreement") was entered into between BMW and Ramirez Ford Sales, Inc. ("RFSI") as the principal obligor; RFSI is a Texas corporation with its principal place of business in McAllen, Texas.

The nature of the floorplan agreements is undisputed. Under the agreements, BMW agreed to advance the funds for the car dealerships to purchase inventory or equipment; in turn, the car dealerships granted BMW a security interest in the collateral, and agreed to re-pay the advanced amount after the dealership disposed of the financed item.[24] As consideration for financing under both the RGVM and RFSI Agreements, Defendant Daniel R. Ramirez ("D. Ramirez") signed a guaranty contract[25] ("D. Ramirez Guaranty") for all obligations under both agreements. Similarly, as additional consideration for financing under the RFSI Agreement, Defendants Michael A. Ramirez ("M. Ramirez") and RGVM signed separate guaranty contracts ("M. Ramirez Guaranty" and "RGVM Guaranty," respectively) for all obligations under the RFSI Agreement.[26]

In the Finance MSJ, BMW seeks summary judgment on its breach of contract claims against those defendants still disputing those claims, asserting that there is no genuine issue of material fact preventing summary judgment. "Ordinarily, suits on promissory notes provide fit grist for the summary judgment mill."[27] At the time that the motion for summary judgment was

---

[23] Brubaker Affidavit, Exh. 5.
[24] *See* Section 2.d. of the floorplan agreements (RGVM and RFSI each "[u]nconditionally promise to make payments to [BMW] as follows: (2) Each Advance for the purchase of Inventory or Equipment shall be payable in full immediately following the sale, lease or other disposition of such item of Inventory or Equipment or within such time period or periods that [BMW] may otherwise specify from time to time . . ."). The definition of collateral will be discussed in greater detail in the context of the second motion for summary judgment.
[25] Brubaker Affidavit, Exh. 4.
[26] Brubaker Affidavit, Exh. 9.
[27] Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1023 (5th Cir. 1995) (quoting FDIC v. Cardinal Oil Well Servicing Co., 837 F.2d 1369, 1371 (5th Cir. 1988)). *See also* Topalian v. Ehrman, 954 F.2d 1125, 1137 (5th Cir.

filed, those defendants included (1) RGVM, as the principal obligor under the RGVM Agreement and as a guarantor of the RFSI Agreement; (2) D. Ramirez, as a guarantor of both the RGVM and RFSI Agreements; and (3) M. Ramirez, as a guarantor of the RFSI Agreement.

Since BMW filed the motion, RGVM has not responded to the Finance MSJ.[28] However, a lack of opposition by one party does not itself warrant summary judgment as to that party.[29] Instead, consistent with the standard enumerated above, summary judgment is warranted only if the movant meets its initial burden;[30] at that point, the analysis ends instead of continuing to whether RGVM has adequately shouldered its burden, for the simple reason that RGVM has not attempted to do so.

In contrast to the lack of response by RGVM, both D. Ramirez and M. Ramirez each responded to the Finance MSJ, asserting fact issues related to BMW's performance under the Agreements.[31] However, since filing that response, M. Ramirez filed a stipulated agreement with BMW;[32] the signatory parties stipulated to a lack of any genuine issue of material fact for trial as between those parties, and further stipulated that BMW is entitled to summary judgment against M. Ramirez. Therefore, the Court's analysis will exclude the response of M. Ramirez.

At issue are the following agreements: the RGVM Agreement; the RFSI Agreement; the RGVM Guaranty; and the D. Ramirez Guaranty. Due to the inter-related nature of the agreements and the claims, it behooves the analysis to highlight the sole point of contention regarding this motion.

---

1992) ("We have said before that because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment.").

[28] Although BMW and RGVM since filed a stipulation of agreement, that agreement was specific to BMW's claim regarding the JLRNA funds and did not address BMW's claim for breach of contract. [*See* Dkt. No. 89 at ¶¶ 5, 8, 9, & 11].

[29] Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988). *See also* FED. R. CIV. P. 56.

[30] *Id.*

[31] Dkt. Nos. 78 & 82.

[32] Dkt. No. 95.

As set forth below, all of the claims for which BMW seeks summary judgment share the requirement that BMW prove its performance under the floorplan agreements. In his response, D. Ramirez asserts that summary judgment is inappropriate because a genuine issue of material fact exists regarding BMW's performance. Before addressing that contention, the Court first analyzes whether BMW has satisfied its initial burden, as the movant and the party bearing the burden of proof on its claims at trial, by providing *prima facie* evidence of each element of its claims.

### B.  Movant Burden

*Breach of the RGVM Agreement*. In order to prevail on its claim against RGVM for breach of the RGVM Agreement, BMW must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[33]

As proof of the first element, BMW has supplied a copy of the RGVM Agreement.[34]  The existence and validity of the contract is not disputed; indeed, in the only response before the Court, D. Ramirez argues that summary judgment is prevented because BMW "did not perform on the contract," an at-least implicit admission that the contract exists.[35]  Further, it is uncontroverted that BMW performed under the contract, at least insofar as BMW lent RGVM substantial amounts of money under the terms of the contract.[36]  BMW also provides ample evidence that RGVM breached the contract, detailing numerous instances of default under the

---

[33] Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009) (citing Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)) (internal quotations omitted).

[34] Brubaker Affidavit, Exh. 1.

[35] Dkt. No. 82 at p. 2.

[36] Brubaker Affidavit at ¶ 16 ("[BMW] lent RGVM over $13,000,000.00 under the RGVM Inventory Agreement, to allow RGVM to acquire inventory for its business."). *See* Dkt. No. 82 at p. 3, ¶5 (Although D. Ramirez makes a passing assertion that BMW's affidavit evidence is insufficient on this point, the Brubaker Affidavit is sufficient evidence, and the issue is removed from controversy by the subsequent admission by D. Ramirez, *i.e.* that "[BMW] did, as Brubaker asserts, loan RGVM and RFSI.").

terms of the contract,[37] the various forms of which are described in Section 13 of the RGVM Agreement.[38] As a result of that default, all obligations under the RGVM Agreement have become due and payable.[39] By affidavit and accompanying documentation, BMW also provides evidence of damages under the RGVM agreement, totaling $11,495,129.69;[40] specifically, BMW has provided the Brubaker Affidavit, as well as itemized records detailing the remaining amount due under the agreement.[41]

_Breach of the Guaranties_. In Texas, a guaranty contract creates a secondary obligation where the guarantor agrees to answer for the obligation of the principal obligor.[42] In order to prevail on its claims for breach of a guaranty contract against both RGVM (as guarantor of the RFSI Agreement) and D. Ramirez (as guarantor of both the RGVM and RFSI Agreements), BMW must show "(1) the existence and ownership of the guaranty contract, (2) the performance of the terms of the contract by plaintiff, (3) the occurrence of the condition on which liability is based, and (4) the guarantor's failure or refusal to perform the promise."[43]

BMW has supported the existence of the RGVM Guaranty and the D. Ramirez Guaranty (collectively, "Guaranties") by submitting copies of each document, as well as testimony

---

[37] _See_ Brubaker Affidavit at ¶ 25. _See_ Brubaker Affidavit, Exh. 1.

[38] _See_ Brubaker Affidavit, Exh. 1.

[39] _See_ Brubaker Affidavit at ¶ 28; _see also_ Brubaker Affidavit, Exh. 2 at p. 10.

[40] This amount reflects only the principal and interest owed under the RGVM Agreement (excluding attorney's fees). [Brubaker Affidavit at ¶¶ 40 ($11,015,151.00 in unpaid principal) & 41 ($482,050.58 of interest accrued as of July 31, 2011); _see also_ Brubaker Affidavit, Exhs. 13 & 14]. Further, amount is revised consistent with the supplement to the motion for summary judgment, which [BMW] filed in order to apprise the Court of the disposition of collateral and update the amount sought in judgment. [Dkt. No. 75]. Like the damages evidence attached to the motion for summary judgment, the supplement is supported by an affidavit of David Brubaker and related business records.

[41] Brubaker Affidavit at ¶¶ 40-43. _See also_ Brubaker Affidavit, Exhs. 13 & 14; Dkt. No. 75.

[42] _See_ Garner v. Corpus Christi Nat'l Bank, 944 S.W.2d 469, 475 (Tex. App.—Corpus Christi 1997, writ denied) (citing Republic Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 114 (Tex. 1978)).

[43] Corona v. Pilgrim's Pride Corp., 245 S.W.3d 75, 80 (Tex. App.—Texarkana 2008, pet. denied) (citation omitted); _see also_ Hasty v. Keller HCP Partners, L.P., 260 S.W.3d 666, 669 (Tex. App.—Dallas 2008, no pet.); Stone v. Midland Multifamily Equity REIT, 334 S.W.3d 371, 378 (Tex. App.—Dallas 2011, no pet.).

authenticating and evidencing BMW's ownership of the Guaranties.[44] As with its performance under the RGVM Agreement, BMW has provided similar evidence that it performed under the RFSI Agreement; to wit, that it loaned RFSI significant amounts of money under the agreement.[45] The Guaranties are identical in describing the condition creating liability, providing:

> The Guarantor hereby unconditionally and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all indebtedness and (ii) the full and prompt performance of all the terms, covenants, conditions and agreements related to the indebtedness.[46]

As described above, liability under the Guaranties is triggered by default under the Agreements. BMW provided evidence of default under the RGVM Agreement, and has provided the same type of evidence of RFSI's default under the RFSI Agreement;[47] the obligations under both agreements have become due and payable.[48] Lastly, BMW has provided uncontroverted evidence that RGVM and D. Ramirez have failed to perform as promised under the Guaranties.[49]

### C.  Non-Movant Burden

BMW has satisfied its initial burden of showing an absence of any genuine issue of material fact for each element of its claims against RGVM and D. Ramirez. The Court now

---

[44] Brubaker Affidavit, Exhs. 4 (D. Ramirez Guaranty) & 7 (RGVM Guaranty). *See also* Brubaker Affidavit at ¶¶ 31 & 32.

[45] *See* fn. 36, *supra*. Brubaker Affidavit at ¶ 17 ("Pursuant to the RFSI Inventory Agreement, [BMW] lent RFSI over $4,300,000.00 to acquire inventory for its business."). *See* Dkt. No. 82 at p. 3, ¶ 5 (Although D. Ramirez makes a passing assertion that BMW's affidavit evidence is insufficient on this point, the Brubaker affidavit is sufficient evidence, and the issue is removed from controversy by the subsequent admission by D. Ramirez, *i.e.* that "[BMW] did, as Brubaker asserts, loan RGVM and RFSI.").

[46] Brubaker Affidavit, Exhs. 4 (D. Ramirez Guaranty) & 7 (RGVM Guaranty) at § 2.a.

[47] *See* Brubaker Affidavit at ¶¶ 25 & 33. *see also* Brubaker Affidavit, Exh. 5.

[48] *See* Brubaker Affidavit at ¶¶ 28 & 36; *see also* Brubaker Affidavit, Exhs. 1 at p. 10 & 5 at p. 16.

[49] *See* Brubaker Affidavit at ¶¶ 32 ("Despite notice of the default by RGVM, Daniel R. Ramirez has made no payments under his guaranty of the obligations of RGVM and has failed to pay and perform under his guaranty.") & 39 ("Despite notice of RFSI's default, Daniel R. Ramirez, Michael A. Ramirez and RGVM have made no payments under their guaranties of RFSI's obligations and have failed to pay and perform under their guaranties of RFSI's obligations.").

considers whether the response of D. Ramirez ("D. Ramirez Response") raises issues of material fact that would prevent summary judgment in favor of BMW.

As noted above, the D. Ramirez Response admits that BMW performed under the agreements by loaning money.[50] However, D. Ramirez asserts that BMW failed to perform "certain material portions of the contract" in the following ways: (1) failure to properly follow federal guidelines for floorplan loans; (2) failure to properly perform monthly floorplan audits; and (3) failure to properly perform mileage audits.[51] D. Ramirez further asserts that BMW failed in its duty of good faith and fair dealing.[52]

These arguments fail to raise an issue of material fact for two reasons. First, the response contains only the "conclusional allegations . . . unsubstantiated assertions, and legalistic argumentation" that are insufficient to satisfy the burden.[53] Although the response nominally asserts that BMW did not perform "these material and essentially [sic] aspects of the loan agreement," the response fails to cite to any actual contractual provision in making its allegations.[54] Additionally, the D. Ramirez Response alleges that BMW failed to fulfill duties under "federal guidelines," but fails to support how, if at all, the guidelines serve to create the alleged duties.

This brings the Court to the second reason why the response fails to prevent summary judgment: the contractual provisions squarely foreclose the arguments made by D. Ramirez. As noted by BMW in its reply, D. Ramirez confuses the concepts of rights and duties. Regarding the alleged duties to inspect and audit, the Agreements provide the following: "Lender shall have the

---

[50] *See* fns. 36 & 45, *supra*.
[51] Dkt. No. 82 at ¶ 5.
[52] *Id.* at ¶ 17.
[53] *See* fns. 12 & 13, *supra*.
[54] Dkt. No. 82 at ¶ 18. Instead, the Court notes that the response uses vague language such as "the drafting agreement *usually* provides . . . " and "[a]ll the documents *should* be inspected . . ."

*right* to inspect Borrower's Inventory and other Collateral and Borrower's books and records . . . ."[55] Similarly, the alleged duty to take possession of vehicle titles is merely a right exercisable at BMW's option.[56]

Moreover, the failure to exercise these rights is not material to the dispute. As noted in the Guaranties, the obligation of the Guarantor is "unaffected by . . . (iv) the failure, delay or omission by Secured Party to enforce, assert or exercise any right power or remedy in connection with the Indebtedness."[57] The terms of the Guaranties allow BMW to sue to enforce its rights thereunder "regardless of whether Secured Party shall have exercised any of its rights or remedies with respect to the Indebtedness."[58]

Similarly, the alleged breach of the duty of good faith and fair dealing does not change the Court's conclusion.[59] "The duty of good faith is not imposed in every contract,"[60] and the threshold question of whether such a duty exists is a question of law to be decided by the

---

[55] Brubaker Affidavit, Exhs. 1 at ¶ 5.d. (RGVM Agreement) & 5 at ¶ 5.d. (RFSI Agreement) (emphasis added).

[56] Brubaker Affidavit, Exhs. 1 at §§ 14 and 14n. & 5 at §§ 14 and 14n. ("Upon occurrence of an event of default . . . lender may require Borrower to deliver to Lender . . . the certificate of origin with respect to each new Vehicle, and the certificate of title or registration with respect to each used, demonstrator, lease or rental Vehicle . . .").

[57] Brubaker Affidavit, Exh. 4 at § 2.b.

[58] *Id.* at § 2.d.

[59] On the subject of good faith, the Court notes that the "Facts" section of the D. Ramirez Response is largely copied, often in near-verbatim form, from Section 210 of the Comptroller's Handbook, published in 1990 by the Office of the Comptroller of the Currency. [Available at: http://www.occ.gov/publications/publications-by-type/comptrollers-handbook/floorplan1.html. *Compare* D. Ramirez Response at ¶ 6 *with* Comptroller's Handbook at ¶ 1; *compare* D. Ramirez Response at ¶ 7 *with* Comptroller's Handbook at ¶ 2; *compare* D. Ramirez Response at ¶ 8 *with* Comptroller's Handbook at ¶ 4; *compare* D. Ramirez Response at ¶ 9 *with* Comptroller's Handbook at ¶ 5; *compare* D. Ramirez Response at ¶ 10 *with* Comptroller's Handbook at ¶ 6]. Not only does the D. Ramirez Response fail to identify the Comptroller's Handbook as the source of a large portion of its content, the content from the Comptroller's Handbook is edited in a deceptively self-serving way that borders on misrepresentation to the Court. The following sentence is found in both the D. Ramirez Response and the Comptroller's Handbook, but the italicized portion is omitted from the former: "Floored items sold and not in process of payment represent *breach of trust by the dealer, and the amounts owed represent* unsecured credit."[*Compare* D. Ramirez Response at ¶ 10 ("Floored items sold and not in process of payment represent unsecured credit.") *with* Comptroller's Handbook at ¶ 6 ("Floored items sold and not in process of payment represent breach of trust by the dealer, and the amounts owed represent unsecured credit.")].

[60] FDIC v. Coleman, 795 S.W.2d 706, 708-09 (Tex. 1990); *see also* Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1, 908 S.W.2d 415, 418 (Tex. 1995) (citing English v. Fischer, 660 S.W.2d 521, 522 (Tex. 1983)) ("[A] duty of good faith and fair dealing does not exist in the context of all contractual relationships.").

Court.[61] In *Federal Deposit Insurance Corp. v. Coleman*, the Texas Supreme Court noted its consistent holding that the duty of good faith arises only "in special relationships marked by shared trust or an imbalance of bargaining power."[62] The relationships at issue are not the type of "special relationships" that would impose a duty of good faith, whether the parties' relationship is considered as between creditor-guarantor[63] or lender-borrower.[64]

As a result of the above considerations, the Court finds that D. Ramirez has failed to raise a genuine issue of material fact that would prevent summary judgment. Therefore, having satisfied its initial burden, BMW is entitled to enforce its right of recovery under the terms of the floorplan agreements. The Court now considers the terms of the floorplan agreements and Guaranties to determine the individual liability of each defendant.

### D. Liability

BMW has shown that RGVM, as the principal obligor under the RGVM Agreement, is liable for the remaining liability of $11,495,129.69.[65] Using similar affidavit and documentary evidence, BMW has shown that an amount of $3,903,019.68 is due and payable under the RFSI Agreement.[66]

The Court now looks to the terms of the Guaranties to determine the liability that arises under those agreements. Generally and in Texas, the interpretation of a guaranty follows two general principles: first, as with other contracts, the words of the guaranty are given their plain

---

[61]  Cole v. Hall, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.) (en banc) (citing H.W. Mitchell v. Missouri-Kansas-Texas R.R., 786 S.W.2d 659, 661 (Tex. 1990)) ("Whether a duty exists between the parties is initially a question of law.").

[62] *Coleman*, 795 S.W.2d at 708-09.

[63] *Id.* ("Similarly, the relationship between a creditor and guarantor does not ordinarily import a duty of good faith.").

[64] FDIC v. Claycomb, 945 F.2d 853, 859 (5th Cir. 1991) ("The borrower-lender relationship, with which we are here concerned, does not give rise to a 'fiduciary' or 'special relationship.'"); *see also* Nance v. Resolution Trust Corp., 803 S.W.2d 323, 333 (Tex. App.—San Antonio 1990, writ denied); Vogel v. Travelers Indem. Co., 966 S.W.2d 748, 753 (Tex. App.—San Antonio 1998, no pet.)

[65] *See* fn. 40, *supra*.

[66] Brubaker Affidavit at ¶¶ 45 ($3,729,402.45 in unpaid principal) & 46 ($173,617.23 of interest accrued as of July 31, 2011). *See also* Brubaker Affidavit, Exhs. 15 & 16.

and common meaning;[67] and second, the guaranty is construed in favor of the guarantor.[68] In this case, other than the guarantors and the agreements to which the Guaranties relate, the relevant terms of the Guaranties are identical; the Court analyzes them concurrently.

Where a guaranty is unconditional, "[t]he guarantor's liability is measured by the principal's liability."[69] As noted above, each of the Guaranties provides that the guarantor "unconditionally and absolutely guarantees" the obligation under the indebtedness.[70] As guarantors of the RFSI Agreement, RGVM and M. Ramirez are jointly and severally liable for the full amount under that agreement.[71] Likewise, as a guarantor of both the RGVM and RFSI Agreements, D. Ramirez is jointly and severally liable for the combined amount owed under both agreements.

The Agreements and Guaranties also provide that the principal obligors and guarantors are liable for reasonable attorney's fees incurred in enforcing those agreements and guarantees.[72] BMW has provided evidence in the Brubaker affidavit that it has incurred attorney's fees as a result of this dispute.[73]

---

[67] *See* Mid-South Telecomms. Co. v. Best, 184 S.W.3d 386, 390-91 (Tex. App.—Austin 2006, no pet.) (citations omitted).

[68] Reece v. First State Bank of Denton, 566 S.W.2d 296, 297 (Tex. 1978).

[69] Hercules Exploration, Inc., v. Halliburton Co., 658 S.W.2d 716, 24 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) (citing Houston Furniture Distribs., Inc., v. Bank of Woodlake, N.A., 562 S.W.2d 880, 884 (Tex. Civ. App.—Hous. [1st Dist.] 1978, no writ) ("A guarantor's liability on a debt is measured by the principal's liability unless a more extensive or a more limited liability is expressly set forth in the guaranty agreement.").

[70] *See* fn. 46, *supra*.

[71] The stipulation entered into between BMW and M. Ramirez stipulate that there is no genuine issue of material fact regarding BMW's motion for summary judgment. In the motion for summary judgment, BMW proffered the same breach-of-guaranty evidence for its claim against M. Ramirez as it did for the other guarantors of the RFSI agreement, namely existence of the guaranty contract [Brubaker Affidavit, Exh. 8], performance by BMW [*See* fn. 45, *supra*], the occurrence of the condition creating liability [*See* fns. 46-48, *supra*], and refusal by the guarantor to perform [*See* fn. 49, *supra*].

[72] Brubaker Affidavit, Exh. 1 at §14.p (RGVM Agreement); Brubaker Affidavit, Exh. 5 at §14.p (RFSI Agreement); Brubaker Affidavit, Exh. 4 at §2.a (D. Ramirez Guaranty); Brubaker Affidavit, Exh. 7 at §2.a (RGVM Guaranty).

[73] Brubaker Affidavit at ¶ 55.

### E. Conclusion

As a result of the foregoing, the Court **GRANTS** summary judgment in favor of BMW and against RGVM and D. Ramirez. The Court **ENTERS** judgment against RGVM for a total of $15,398,149.37, which comprises $11,495,129.69 liability as the principal obligor under the RGVM Agreement and $3,903,019.68 as a guarantor of obligations under the RFSI Agreement. The Court **ENTERS** judgment against D. Ramirez for a total of $15,398,149.37, which comprises $11,495,129.69 liability as a guarantor of obligations under the RGVM Agreement and $3,903,019.68 liability as a guarantor of obligations under the RFSI Agreement. Finally, the Court **ENTERS** judgment against M. Ramirez, as a guarantor of obligations under the RFSI Agreement, for a total of $3,903,019.68.

Such judgments include reasonable attorney's fees and costs. BMW may submit evidence of attorney's fees within 14 days of this order and, if such amounts are contested, objections shall be filed within 14 days thereafter.

### III. Motion for Summary Judgment as to Funds Interpleaded by Jaguar Land Rover North America, LLC[74] ("Interpleader MSJ")

BMW has also moved for summary judgment regarding its claim to certain funds interpleaded into the Court's registry. The Court now considers whether it should grant the requested relief.

### A. Relevant Background

*The JLRNA Funds*. Under agreements between Jaguar Land Rover NA, LLC ("JLRNA") and RGVM (collectively, "franchise agreements"), RGVM was authorized as a dealer of Jaguar and Land Rover vehicles.[75] In late 2010, JLRNA terminated the franchise agreements with

---

[74] Dkt. No. 71.
[75] Dkt. No. 10, Attach. 7 at ¶ 6.

RGVM and, in response, RGVM filed a protest with the Texas Department of Motor Vehicles.[76] JLRNA and RGVM subsequently entered into a settlement agreement, which involved a settlement payment by JLRNA.[77] Due to multiple parties asserting claims to the settlement funds, JLRNA filed a Plea in Intervention and Petition for Interpleader of Funds ("Interpleader") in state court, which was revised after removal to this Court.[78] The Court granted the requested relief in the form agreed to by the parties and, on January 19, 2012, JLRNA deposited $272,867.07 into the registry of the Court ("JLRNA Funds").[79]

_The Claimants_. BMW has a security interest under the RGVM Agreement in collateral as defined in that agreement. The RGVM Agreement defines the collateral to which the security interest attaches as follows:

> (e) all general intangibles, payment intangibles, franchise rights, . . . involving or emanating from Borrower's business or assets; (f) all rights to receive payment, credits, and other compensation (including rebates, allowances, and additional "factory credits") from any manufacturer, distributor, or supplier of Inventory or Equipment, or from any of their subsidiaries or affiliates; . . . and (h) all proceeds (to the fullest extent defined and described in the Code) of the foregoing, including without limitation proceeds of proceeds, goods received in trade, claims and tort recoveries . . . and all cash and other funds held in all deposit accounts in which proceeds may be deposited; in each of clauses (a) through (h) above, to the fullest extent defined and described in the Code.[80]

As set forth above, due to the default under the RGVM Agreement, BMW is entitled to $11,495,129.69 under the terms of that agreement. BMW has asserted its entitlement to the JLRNA Funds as part of the collateral under the RGVM Agreement.

On October 26, 2011, Ricardo Munoz and Rene Martinez ("M&M" or "Responding Intervenors") filed their motion to intervene, along with a supporting memorandum, asserting a

---

[76] _Id_. at ¶¶ 9-12.
[77] _Id_. at ¶¶ 15-20.
[78] _Id_. (Plea in Intervention and Petition for Interpleader of Funds); _see also_ Dkt. Nos. 48 (Agreed Proposed Order) & 51 (Motion for Entry of Agreed Order).
[79] Dkt. Nos. 53 (Agreed Order) & 54 (Notice of Funds Deposited Into the Court's Registry).
[80] Brubaker Affidavit, Exh. 1 at §1.

claim to the funds interpleaded by JLRNA;[81] the Court granted the motion on December 25, 2011.[82] In their motion to intervene, M&M assert they hold a superior claim to the JLRNA funds due to a security interest under several loan agreements.[83]

On December 9, 2011, the Texas Comptroller of Public Accounts, which had previously claimed an interest in the JLRNA funds, disclaimed any such interest,[84] and on May 11, 2012, the United States and BMW filed a stipulation resolving their claims to the JLRNA funds.[85]

On May 14, 2012, BMW filed the Interpleader MSJ and brief in support, seeking summary judgment that its claim to the JLRNA funds is superior to that of any other claimants.[86] On June 4, 2012, both RGVM and M&M filed responses to the Interpleader MSJ. The issues raised in the response of RGVM have since been resolved by a stipulation between BMW and RGVM.[87] As a result, the Court will limit its consideration of responses to that of M&M ("M&M Response"), which asserts that genuine issues of material fact prevent the summary judgment requested by BMW.[88]

### B.  Summary Judgment Evidence

For the purposes of the Interpleader MSJ, BMW offers summary judgment evidence in addition to that which the Court has already discussed.[89] BMW offers an affidavit by Cindy Horton ("Horton Affidavit"), a paralegal for the attorneys of BMW who regularly obtains public

---

[81] Dkt. No. 19 & 20.
[82] Dkt. No. 46.
[83] Dkt. No. 19 at ¶ 20.
[84] Dkt. No. 44.
[85] Dkt. No. 67. Under the terms of the stipulation, [BMW] and the United States agreed that the United States would receive $25,000 of any JLRNA funds disbursed to [BMW] by its claim, assuming that at least $25,000 was disbursed. In turn, the remainder of any disbursed amount in excess of $25,000.
[86] Dkt. No. 71 & 72.
[87] Dkt. Nos. 77 (Response of RGVM) & 89 (Stipulation between BMW and RGVM).
[88] Dkt. No. 78.
[89] *See* I(B), *supra*.

records documents.[90] The Court finds that the Horton Affidavit meets the requirements of

Federal Rule of Civil Procedure 56(c) and serves as competent summary judgment evidence.[91]

### C. Movant Burden

BMW's claim to the JLRNA funds is based upon the Uniform Commercial Code, as

adopted by Texas under Chapter 9 of the Texas Business and Commerce Code. Specifically,

BMW argues that the JLRNA funds are proceeds of RGVM's franchise rights, to which BMW's

security interest under the RGVM Agreement attaches as proceeds of general intangibles.

BMW's perfection of the security interest is not in dispute. Under the choice of law

provisions of the Texas UCC, the law governing perfection is determined by the state in which

the debtor is located.[92] In turn, § 9.307(e) defines the location of a corporate debtor, such as

RGVM, as the state in which the corporation was organized; RGVM is organized under the laws

of Delaware and the UCC, as adopted by Delaware under Title 6 of the Delaware Code

Annotated ("Delaware UCC"),[93] governs pertinent rules of perfection.

As to the manner of perfection, the Delaware UCC provides that a security interest in

general intangibles can only be perfected by filing a UCC financing statement.[94] Regarding the

location where the requisite filing must be made, the Delaware UCC provides, as a general rule

to which no exceptions are here applicable, that the UCC financing statement must be filed with

the office of the Delaware Secretary of State.[95]

---

[90] Dkt. No. 71, Attach. 8 at ¶¶ 2 & 3.

[91] *See* Horton Affidavit at ¶ 1 (attesting to personal knowledge, mental competency, age over 21, and lack of conviction).

[92] TEX. BUS. & COMM. CODE ANN. § 9.301(1) (2005) (beyond limited exceptions which do not apply to the type of collateral at issue here, "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest.").

[93] DEL. CODE ANN. tit. 6, § 9.

[94] *Compare* Delaware UCC § 9-310(a) *with* Texas UCC § 9.301.

[95] Delaware UCC § 9-501.

BMW has provided summary judgment evidence that it has properly filed and perfected its security interest under the RGVM Agreement, which includes the Horton affidavit and a copy of the UCC financing statement filed with the Delaware Secretary of State on May 5, 2008 ("Financing Statement").[96] The Financing Statement describes the collateral as follows:

> All vehicle inventory, parts and accessories inventory, equipment, fixtures, accounts, holdback reserves, manufacturer rebates and incentive payments, general intangibles of the Debtor now owned and hereafter acquired, wherever located; all accessions to, substitutions for and all replacements of any of the foregoing; all chattel paper, documents, instruments, monies, residues and property of any kind related to any of the foregoing, all books and records and property of Debtor related to any of the foregoing, including without limitation, computer programs, print-outs, and other computer hardware and software materials and records pertaining to any of the foregoing, together with all proceeds and product of the foregoing, including without limitation, proceeds of insurance policies insuring any of the foregoing.[97]

As BMW points out in the Interpleader MSJ, the Delaware UCC provides the general rule that the first secured party to file or perfect has priority over other claimants.[98] In support of its superior claim under this principle, BMW has provided summary judgment evidence in the form of the Horton Affidavit and accompanying records;[99] the evidence shows that BMW is the first and only party to this action that has filed a UCC financing statement with the Delaware Secretary of State.

The facts in the previous paragraph are undisputed; BMW has a priority claim to any collateral described by the Financing Statement. However, the parties dispute whether the description of collateral in the Financing Statement sufficiently describes the JLRNA funds.

---

[96] Horton Affidavit at ¶ 6 & Exh. 4.
[97] Brubaker Affidavit, Exh. 12.
[98] *See* Delaware UCC at § 9-322(a)(1) (exceptions outlined elsewhere in the article are not applicable in this case).
[99] *See* Horton Affidavit at ¶ 6 & Exh. 3.

### D.  Whether JLRNA funds are "Collateral" under Financing Statement

BMW asserts that its first-in-time and proper-in-place filing gives it priority to the JLRNA Funds. As set forth in the Interpleader MSJ, BMW's position is based on the following rational sequence: (1) under the above-described provisions of the Delaware UCC, BMW's filing gives it priority to all collateral to which its security interest attaches; (2) "general intangibles," as defined in the Financing Statement's collateral description, includes the franchise rights of RGVM; and (3) because the JLRNA funds were paid in settlement of RGVM's franchise-related claims, the JLRNA funds are derivative "proceeds" of those franchise rights to which BMW's security interest attaches.

In their response, M&M do not challenge the above facts regarding BMW's filing, but instead assert that the filing does not legally result in BMW's superior claim. M&M challenge the inclusion of the JLRNA funds as collateral to which BMW's security interest attaches, specifically arguing: (1) that the definition of collateral in the Financing Statement does not include RGVM's franchise rights and (2) that, even if the Financing Statement does include franchise rights, the JLRNA Funds are nonetheless excluded as after-acquired property.

As a result, the dispute over the Interpleader MSJ solely revolves around the classification of collateral. The UCC is intended to "simplify, clarify, and modernize the law governing commercial transactions," and, in light of that purpose, the classification of collateral under the UCC is a question of law.[100]

### i.  _Scope of "General Intangibles"_

As discussed above, BMW asserts that its security interest attaches to RGVM's franchise rights as a type of "general intangible" described in its Financing Statement. As a first matter of

---

[100] Matter of Newman, 993 F.2d 90, 93 (5th Cir. 1993) (citing In re Coral Petroleum, Inc., 50 B.R. 830, 837 (Bankr. S.D. Tex. 1985).

contention, M&M assert that the Financing Statement does not define collateral in a way that encompasses the franchise rights;[101] essentially, M&M's argument is that, because such terms as "investment rights, franchise rights, and all rights to receive payment, credit and other compensation . . ." are not expressly included in the collateral description, the JLRNA funds are not collateral to which BMW has a superior claim.

The definition of general intangibles is found in § 9.102(42) of the Texas UCC and broadly includes those items which M&M challenges as not expressly-delineated in the Financing Statement.[102] The Fifth Circuit defined the concept of "general intangibles" to include "a bundle of rights such as those inherent in a franchise . . . ."[103] Additionally, the 2011 Commentary to § 9.102 defines rights under a franchise agreement as a general intangible in explaining the concept of an account debtor.[104] As a result of the foregoing analysis, the Court finds that the RGVM franchise rights vis-à-vis JLRNA are a type of "general intangible" as contemplated by the UCC. As such, the Court finds that BMW's priority claim, established by the Financing Statement, attaches to those rights as collateral under the RGVM Agreement.

ii.   _Scope of "Proceeds"_

M&M's second point in opposition to the Interpleader MSJ focuses on the source of the JLRNA funds, which M&M characterize as settlement for RGVM's commercial tort claim against JLRNA for breach of the franchise dealer agreement."[105] M&M assert various grounds to

---

[101] Dkt. No. 78 at ¶ 23.

[102] Texas UCC §9.102(a)(42) ("'General intangible' means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment of intangibles and software.").

[103] Matter of Newman, 993 F.2d 90, 93 (5th Cir. 1995).

[104] _See_ Texas UCC §9.102, UNIFORM COMMERCIAL CODE COMMENT, 2011 Main Volume, 5.h. ("For example, if a franchisee uses its rights under a franchise agreement (a general intangible) as collateral, . . .").

[105] Dkt. No. 78 at ¶ 35.

distinguish the JLRNA funds as commercial tort claims, rather than general intangibles.[106] Although the Court recognizes that BMW has provided evidence in the Maas Affidavit that the JLRNA funds were not paid in settlement of commercial tort claims, the Court construes any factual disputes in favor of the non-movant. However, as discussed below, M&M's funds-as-tort-settlement characterization, even if assumed to be true, does not raise a material fact issue that would prevent summary judgment.

M&M argue that, because the Texas UCC excludes commercial tort claims from the definition of general intangibles, BMW does not have a priority claim to the JLRNA funds paid in settlement of such claims.[107] However, in failing to distinguish between general intangibles and proceeds arising therefrom, the argument does not vitiate BMW's priority claim in the JLRNA funds.

As described above, the franchise rights of RGVM are within the scope of the "general intangibles" described by the Financing Statement.[108] The Financing Statement also describes the collateral as encompassing ". . . all proceeds and product of the foregoing."[109]

The Texas UCC defines proceeds as:

"(A) whatever is acquired from the sale . . . or other disposition of the property; (B) whatever is collected on, or disbursed on account of, collateral; (C) rights arising out of collateral, (D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of . . . or infringement of rights in, or damage to the collateral . . . ."[110]

---

[106] The Court notes that BMW has submitted extensive argument and evidence disputing M&M's characterization of the JLRNA funds as settlement for tort claims. [*See* Dkt. No. 87 at ¶¶ 20-24]. Without deciding on the merit of the additional arguments proffered by BMW in opposition to that characterization, the Court continues the analysis by assuming without deciding that the JLRNA funds might have encompassed settlement of a commercial tort claim.

[107] Dkt. No. 78. *See also* Texas UCC § 9.102(a)(42) (defining a general intangible as personal property other than commercial tort claims).

[108] *See* III(D)(i), *supra*.

[109] Brubaker Affidavit, Exh. 12.

[110] Texas UCC §9.102(a)(65).

Unlike the definition of general intangibles, the definition of proceeds does not exclude commercial tort claims. As highlighted in BMW's reply, the 2011 Commentary to § 9.102 qualifies the definition of a commercial tort claim, providing that "[a] security interest in a tort claim also may exist under this Article if the claim is proceeds of other collateral."[111] Fifth Circuit authority also recognizes that a security interest does not cease to attach to collateral merely because the collateral is converted into proceeds. In *Paskow v. Calvert Fire Insurance Company*, the Fifth Circuit held that funds paid on account of collateral were "one and the same property for the purpose of determining when the funds came into existence."[112] The Court emphasizes that this precedent vitiates both M&M's argument that BMW's security interest does not attach to the proceeds, as well as their argument that the JLRNA funds are after-acquired property.

Although M&M assert that the source of the JLRNA funds prevents BMW's assertion of its priority claim, the broad definition of "proceeds" encompasses every putative source of funds set forth in the M&M Response. In support of its position, M&M provide the Court with a copy of RGVM's notice of protest to the Texas Department of Motor Vehicles,[113] arguing that the Notice of Protest implicates several claims, including (1) tortious breach of the implied covenant of good faith and fair dealing and (2) independently tortious interference with business and contractual relationships.[114]

Even assuming that the JLRNA funds were paid, in part, as settlement of such claims, M&M's own descriptions of these putative claims foreclose their exclusion from the definition of "proceeds" as outlined above. As the source of the duty of good faith and fair dealing, M&M

---

[111] *See* Texas UCC §9.102, UNIFORM COMMERCIAL CODE COMMENT, 2011 Main Volume, 5.g.
[112] Paskow v. Calvert Fire Ins. Co., 579 F.2d 949, 954 (5th Cir. 1978).
[113] Dkt. No. 78, Exhibit J.
[114] Dkt. No. 78 at ¶ 25.

cite to the franchisor-franchisee relationship.[115] The franchise rights are thus a condition precedent to the duty underlying the tort claim, and the claim would not exist independent of those franchise rights. Similarly, the claim of contractual interference arises solely as a result of the franchise rights in which BMW had its priority claim. These relationships between the claims and the franchise rights clearly illustrate how settlement of those claims falls squarely within the definition of "proceeds": the JLRNA funds represent "the value arising out of the [franchise rights]" for the "interference with the use of . . . or infringement of rights in, or damage to the [franchise rights] . . . ."[116]

### E.  Conclusion

After the above consideration, the Court finds that the JLRNA funds represent proceeds arising out of a general intangible as a matter of law. BMW has a superior claim over other claimants to the JLRNA funds. As a result, the Court **ENTERS** summary judgment in favor of BMW as against all other claimants to the JLRNA funds. Additionally, the Court **ORDERS** BMW to submit a proposed order, consistent with this order and the stipulations between BMW and other parties, for the disbursement of the JLRNA funds.

IT IS SO ORDERED.

DONE this 1st day of October, 2012, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[115] *Id*. at ¶ 26 ("The contractual relationship between a car dealership franchisor and franchisee give rise to a special relationship sufficient to create a duty of good faith and fair dealing.").
[116] *See* fn. 110, *supra*.